**FILED**

**JAN - 8 2010**

Clerk, U.S. District and
Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

WILDEARTH GUARDIANS
312 Montezuma Avenue
Santa Fe, NM 87501

        Plaintiff,

vs.

KEN SALAZAR, Secretary
United States Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

        Defendant.

No. _____

Case: 1:10-cv-00048
Assigned To : Sullivan, Emmet G.
Assign. Date : 1/8/2010
Description: Admn. Agency Review

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

---

**I.  INTRODUCTION**

1.  Defendant, Ken Salazar, Secretary of the United States Department of the Interior ("Secretary"), through the United States Fish and Wildlife Service ("FWS"), the agency to which the Secretary has delegated his responsibilities in this case, has failed to comply with his mandatory duty to determine within one year of receiving Plaintiff's July 24, 2007 Petition ("Petition") whether the Frigid Ambersnail (*Catinella gelida*) warrants listing under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544. Plaintiff brings this suit in order to force the Secretary to comply with his statutory duty.

1

## II. PARTIES

### A. Plaintiff

2. Plaintiff WildEarth Guardians, suing on behalf of itself and its adversely affected members, is a non-profit environmental organization based in Santa Fe, New Mexico. WildEarth Guardians was created on January 28, 2008 by the merger of three organizations: Forest Guardians, Sinapu, and Sagebrush Sea Campaign. WildEarth Guardians has an active endangered species protection campaign that is national in scope. As part of this campaign, WildEarth Guardians, through its predecessor-in-interest Forest Guardians, petitioned the FWS on July 24, 2007 to list the Frigid Ambersnail as a threatened or endangered species under the ESA. WildEarth Guardians engaged in prior litigation with Dick Kempthorne, the former Secretary of the United States Department of the Interior, in order to force the Secretary to act on the Petition as required by 16 U.S.C. § 1533(b)(3)(A), a different statutory deadline than the one at issue in this case. WildEarth Guardians is harmed by the Secretary's failure to make the required finding in a timely manner because it devoted significant time and resources in: (1) preparing the Petition, (2) forcing the Secretary through litigation to comply with Section 1533(b)(3)(A), and (3) preparing comments in response to the Secretary's request for information in order to help him review the status of the Frigid Ambersnail pursuant to Section 1533(b)(3)(A). WildEarth Guardians is further harmed by the Secretary's failure to make the required finding because the Secretary is denying it information concerning the Secretary's opinion as to the biological status of the Frigid Ambersnail. This information, to which WildEarth Guardians has a legal right, would be useful to WildEarth Guardians in prioritizing its conservation efforts and in furthering its mission to save imperiled species.

3.   WildEarth Guardians has over 4,500 members, some of whom reside in the District of Columbia and in the areas of the United States in which the Frigid Ambersnail is found. Members of WildEarth Guardians frequently use and enjoy the Frigid Ambersnail and its current or potential habitat for wildlife viewing, recreational, aesthetic, and scientific activities, and will continue to do so in the future. Members of WildEarth Guardians are particularly concerned with the conservation of the Frigid Ambersnail and the ecosystem on which it depends for survival, and have specific and concrete future plans to visit and enjoy the Frigid Ambersnail and its current or potential habitat. Members of WildEarth Guardians are harmed by the Secretary's failure to respond to the Petition as required by the ESA because activities permitted in the absence of listing are contributing to the extinction of the species and, absent listing, the Secretary will not take the steps necessary to ensure the species' recovery.

4.   WildEarth Guardians and its members have a substantial interest in this matter and are adversely affected by the Secretary's failure to comply with the ESA's requirement that the Secretary make a determination to list the Frigid Ambersnail as threatened or endangered within one year of their Petition. The requested relief will redress WildEarth Guardians' and its members' injuries.

**B.   Defendant**

5.   Defendant Ken Salazar, as Secretary of the United States Department of the Interior, has ultimate responsibility for implementing the ESA as it pertains to the Frigid Ambersnail. Secretary Salazar is being sued in his official capacity. In this case, Secretary Salazar has delegated his responsibilities under the ESA to the FWS, an agency within the United States Department of the Interior.

### III. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 16 U.S.C. § 1540(g)(1)(C) (ESA citizen suit provision).

7. This Court has authority to grant WildEarth Guardians' requested relief pursuant to 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief).

8. Pursuant to 16 U.S.C. § 1540(g)(2)(C), WildEarth Guardians provided written notice to the Secretary more than 60 days ago, informing him that he was in violation of 16 U.S.C. § 1533(b)(3)(B), and of WildEarth Guardians' intent to sue if the violation was not promptly remedied.

9. An actual controversy exists within the meaning of 28 U.S.C. § 2201 because the Secretary has not remedied his violation of the ESA by making the overdue finding required by 16 U.S.C. § 1533(b)(3)(B).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A). The Secretary officially resides in this judicial district.

### IV. STATUTORY FRAMEWORK AND FACTS GIVING RISE TO PLAINTIFF'S CLAIM FOR RELIEF

#### A. The Statutory and Regulatory Framework Underlying Plaintiff's Claim

11. Congress enacted the ESA with the purpose to provide both "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved," and "a program for the conservation of such endangered and threatened species." 16 U.S.C. § 1531(b).

12. The Secretary, acting through the FWS, has primary responsibility for implementing the ESA when it comes to non-marine species. The Frigid Ambersnail is not a marine species.

13.     To fulfill its purpose, the ESA requires the Secretary to "determine whether any species is an endangered species or a threatened species." *Id.* § 1533(a)(1). An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A "threatened species" is a species "which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

14.     The ESA requires the Secretary to publish "a list of all species determined . . . to be endangered species and a list of all species determined . . . to be threatened species." *Id.* § 1533(c)(1). This listing process is the critical first step in the ESA's system of species protection and recovery.

15.     In determining whether to list a particular species as endangered or threatened, the ESA requires the Secretary to consider the following factors:

>   (A) the present or threatened destruction, modification, or curtailment of its habitat or range;
>   (B) overutilization for commercial, recreational, scientific, or educational purposes;
>   (C) disease or predation;
>   (D) the inadequacy of existing regulatory mechanisms; or
>   (E) other natural or manmade factors affecting its continued existence.

*Id.* § 1533(a)(1). The existence of any one factor may require the Secretary to list the species as endangered or threatened. The Secretary's determination required by Section 1533(a)(1) is to be made "solely on the basis of the best scientific and commercial data available to him." *Id.* § 1533(b)(1)(A).

16.     If the Secretary determines that a particular species is endangered or threatened, the Secretary must, concurrently with making that determination, "designate any habitat of such species which is then considered to be critical habitat." *Id.* § 1533(a)(3)(A)(i).

17. Pursuant to 16 U.S.C. § 1533(b)(3), any interested person may petition the Secretary to list a species as endangered or threatened.

18. Upon receiving a petition to list a species as endangered or threatened, the ESA requires the Secretary to make an initial finding, commonly known as a "90-day finding." Specifically, "[t]o the maximum extent practicable, within 90 days after receiving the petition . . ., the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). The ESA's implementing regulations define "substantial information" as "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b).

19. If the Secretary makes a positive 90-day finding, the ESA requires the Secretary to publish the finding in the Federal Register and to "promptly commence a review of the status of the species concerned." 16 U.S.C. § 1533(b)(3)(A).

20. Moreover, upon a positive 90-day finding 16 U.S.C. § 1533(b)(3)(B) requires the Secretary to make one of three additional findings within twelve months of receiving the petition: (1) the petitioned action is warranted; (2) the petitioned action is not warranted; or (3) the petitioned action is warranted but precluded by other pending proposals to list species of higher priority, provided that the Secretary is making expeditious progress on other listing actions. This is commonly known as a "12-month finding."

21. If the Secretary makes a 12-month finding that the petitioned action is warranted, 16 U.S.C. § 1533(b)(5) requires the Secretary to publish in the Federal Register a proposed rule to list the species as endangered or threatened.

22. Within one year of publishing a proposed rule to list a species as endangered or threatened, 16 U.S.C. § 1533(b)(6)(A) requires the Secretary to make a final decision on the proposal, or to extend the proposal for six months.

### B. The Factual Background Underlying Plaintiff's Claim

#### 1. The Frigid Ambersnail

23. The Frigid Ambersnail, *Catinella gelida*, is a terrestrial mollusk approximately 7.0 mm in length. It was first described from fossil specimens in 1927 as a subspecies of *Succinea grosvernori*. In 1963 it was recognized as a distinct species, moved into a new genera, and given its current name. Live specimens of the Frigid Ambersnail were first collected in Iowa in 1983. Its shell is a light yellow-green, while its body is dark grey to nearly black.

24. The Frigid Ambersnail is a Pleistocene relict species, meaning that it was common during the Pleistocene, or ice-age, era that lasted until approximately 10,000 years before present ("YBP"), but is extremely rare today. Today it survives only on tiny patches of near-glacial habitat, the flora and fauna of which constitute a unique example of surviving ice-age biota. It is a poor disperser, has specific biological requirements, and exists in small isolated populations connected to relict habitat. Some scientists regard the Frigid Ambersnail as one of the most endangered land snails in the United States.

25. The Frigid Ambersnail exhibits clear and significant soil surface preferences, living in calcium-rich soils found within specific habitats providing specific micro-climatic conditions and soil temperature for its existence. These specific habitats are less than twenty yards long and two yards wide, and the lands surrounding these unique habitats are inhospitable to the Frigid Ambersnail. It has typically been found one to six inches below the soil surface, and has never been found crawling on the soil surface or on vegetation.

26. The Frigid Ambersnail is known to inhabit seventeen sites in four counties in Iowa, and eight sites in three counties in South Dakota. The species is rare, with few live specimens having been found at any site and low population densities at all sites. Although no live specimens were found during a 1999 South Dakota survey, the number of reported sites in South Dakota rose from eight to twelve in 1999. The Frigid Ambersnail has reportedly been found in sixteen sites in five counties in Wisconsin, although the validity of these findings is questioned. Although the Frigid Ambersnail is found over a relatively wide geographic area, the populations at each site are extremely small and the sites are isolated from each other so that no connectivity or intermingling between the sites is possible.

27. In Iowa, the Frigid Ambersnail inhabits the talus of algific, i.e., cold-producing, talus slopes found in the Paleozoic Plateau. Algific talus slopes formed in the Late Wisconsinan period, approximately 25,000 to 18,000 YBP. Algific talus slopes are north-facing, limestone and dolomite cliffs, characterized by vertical sinkholes with small horizontal fractures. The Frigid Ambersnail lives in the talus that has accumulated at the base of a handful of these cliffs. Air flowing through the sink holes and fissures is critical to the Frigid Ambersnail's survival as it "air conditions" its habitat in the summer, and ameliorates the effects of the harsh winters. The talus itself is covered by a thin vegetative layer that prevents erosion. Disturbing this thin layer can easily destabilize the micro-habitat on which the Frigid Ambersnail relies for its survival.

28. In South Dakota, the Frigid Ambersnail lives in somewhat dry wooded talus near the base of a few limestone slopes in the Black Hills National Forest. Although the South Dakota sites lack the algific features of those in Iowa, the South Dakota sites closely resemble the Iowa sites. The glacial history of the Black Hills is similar to that of the Paleozoic Plateau.

29. In Wisconsin, the Frigid Ambersnail has reportedly been found inhabiting the base of a few carbonate cliffs bordering Lake Michigan, which form part of the Nigerian Escarpment. Some scientists believe that the Frigid Ambersnail colonized this area around 10,000 YBP as the Wisconsinan glaciers receded at the end of the ice age. As noted above, however, there is disagreement in the scientific community as to whether the Wisconsin findings were correctly identified as Frigid Ambersnail. Regardless, the scientific community agrees that the Wisconsin sites are very strongly disjunct from the Iowa sites: it is impossible for the two locales to intermingle, and both units are evolutionarily significant.

### 2. The Decline of the Frigid Ambersnail and Contemporary Threats to Its Existence

30. During the Pleistocene era, the Frigid Ambersnail had an extensive range, most recently peaking in the Late Wisconsinan period approximately 18,000 – 12,000 YBP. Fossil records indicate that the Frigid Ambersnail's historic range included the states of Illinois, Indiana, Iowa, Kentucky, Louisiana, Michigan, Mississippi, Missouri, New York, Ohio, and South Dakota. The Frigid Ambersnail's documented range loss is dramatic and unusually large for a land snail.

31. One significant factor driving the Frigid Ambersnail's decline is the modification and/or destruction of its precarious micro-climatic habitat, caused by a number of factors. Livestock grazing is the single biggest cause of the Frigid Ambersnail's site loss. The Frigid Ambersnail tends to live on a narrow portion of talus, where animal traffic is the greatest and access to cliffs is simplest. Livestock grazing destroys the talus component on which the Frigid Ambersnail lives – either through loss of flora or by direct compaction of the soil. Similarly, the Frigid Ambersnail sites, which are often located near human or animal trails, are subjected to landslide damage and physical dislodgement.

32. The Frigid Ambersnail's habitat has also been modified and/or destroyed by the filling of upland sinks that feed algific talus slopes. The upland sinks are subjected to extensive farming and have also been used to dispose everything from household garbage to toxic waste. Clogging these sinks prohibits air from circulating through the algific talus slopes' fissures, thereby making the talus slopes inhospitable to the Frigid Ambersnail. Moreover, agricultural pollutants modify the flora on which the Frigid Ambersnail relies and, in some cases, are directly toxic to the Frigid Ambersnail.

33. Other direct threats to the Frigid Ambersnail and its habitat include recreational activities, road building, and logging, all of which compact the talus, disturb the soil, and increase erosion. The Frigid Ambersnail is also threatened by rock quarrying and mining. Limestone and dolomite quarrying directly destroys the Frigid Ambersnail and its habitat. Runoff from gold mining in the Black Hills of South Dakota is toxic to the Frigid Ambersnail.

34. Non-native plant species, particularly garlic mustard and buckthorn, have invaded Frigid Ambersnail sites. These non-native plants modify and destroy the Frigid Ambersnail's habitat by altering its food supply.

35. The loss of upland floodplain habitat to grazing and agricultural activities has also modified and destroyed the Frigid Ambersnail's habitat. The conversion of upland floodplains to such activities causes erosion, which exacerbates the frequency and amplitude with which the Frigid Ambersnail's habitat is flooded.

36. Finally, forest fires resulting from fire suppression policies also have modified and destroyed the Frigid Ambersnail's habitat.

37. Existing regulatory mechanisms are inadequate to protect the Frigid Ambersnail. In 1989, the Secretary established the Driftless Area National Wildlife Refuge ("DANWR") for

the recovery of two federally listed species in Northeast Iowa. However, no Frigid Ambersnail site falls within the DANWR and even though additional DANWR acquisitions have been authorized since 2006 that might possibly benefit the Frigid Ambersnail, little additional acquisition has occurred.

38. In South Dakota, the United States Forestry Service ("USFS") fails to adequately protect the Frigid Ambersnail. Even though the USFS issued a directive in 1997 to conserve the Frigid Ambersnail's habitat, the directive failed to specify how the habitat was to be conserved. Significantly, since the 1997 directive there have been no meaningful actions taken to protect the Frigid Ambersnail. For example, no sites have been withdrawn from mineral development, grazing allotments, or water development; nor have any fire protections or other protections from recreational or off-road vehicle travel been given to the sites. Furthermore, in 2005 the USFS failed to designate the Frigid Ambersnail as a Management Indicator Species even though it had the opportunity to do so. Nor has the USFS designated the Frigid Ambersnail as a Sensitive species.

39. The Frigid Ambersnail is also threatened by other natural or manmade factors – specifically global warming. As a relict species, the Frigid Ambersnail is particularly susceptible to global warming due to the fact that its habitat cannot form under the current climate regime. In other words, it is not possible for any new habitat for the Frigid Ambersnail to be created.

40. Scientists recommended as early as 1991 to list the Frigid Ambernail as an endangered species. Iowa lists the Frigid Ambersnail as endangered, while Wisconsin lists it as a species of special concern. The Frigid Ambersnail is ranked G1, or critically imperiled, by NatureServe.

### 3. Plaintiff's Efforts To Protect the Frigid Ambersnail

41. On July 24, 2007, Forest Guardians, WildEarth Guardians' predecessor-in-interest, petitioned the FWS to list a number of species in the FWS's Rocky Mountain Region as endangered or threatened. The FWS received the Petition on July 30, 2007.

42. The Petition included all full species in the FWS's Rocky Mountain Region not currently listed or considered candidates for listing by the Secretary, but which were considered to be "critically imperiled" or "imperiled" according to the NatureServe database. NatureServe's terminology of "critical imperiled" and "imperiled" are functionally equivalent to the ESA's definitions of "endangered" and "threatened," and the FWS itself considers NatureServe to be a source for authoritative conservation information. WildEarth Guardians asked the Secretary to incorporate all information in the NatureServe database concerning these species as part of the Petition. The Petition specifically included the Frigid Ambersnail.

43. On August 24, 2007, the Secretary acknowledged receipt of the Petition by letter. In his letter, the Secretary stated that he would begin work on the Petition in October 2007.

44. Pursuant to 16 U.S.C. § 1540(g)(2)(C), WildEarth Guardians sent the Secretary and the FWS a formal 60-day notice letter on November 8, 2007, informing the Secretary and the FWS that they were violating the ESA by failing to make a 90-day finding on the Petition. The Secretary and the FWS received the 60-day notice letter on November 14, 2007.

45. By letter dated January 10, 2008, the FWS's Rocky Mountain Region responded to WildEarth Guardians' 60-day notice letter, stating that the FWS anticipated making negative 90-day findings on some of the species included in the Petition by September 2008.

46. On March 19, 2008, WildEarth Guardians filed a complaint in this Court against the Secretary (Case No. 1:08-cv-00472-CKK), alleging, *inter alia*, that the Secretary violated his

statutory duty to make a 90-day finding on the Petition. WildEarth Guardians filed its amended complaint on January 14, 2009.

47.  On February 5, 2009, the FWS published in the Federal Register at 74 Fed. Reg. 6122 a negative 90-day finding for a number of species contained in the Petition. The Frigid Ambersnail was not included in the February 5, 2009 negative 90-day finding.

48.  On March 13, 2009, WildEarth Guardians and the FWS entered into a stipulated settlement agreement, agreeing that by August 9, 2009 the FWS would make a finding for each species listed in the Petition for which no 90-day finding had yet been made. The total number of species remaining in the Petition for which no 90-day finding had yet been made was 38. The Frigid Ambersnail was one of the remaining species.

49.  On August 18, 2009, the FWS published in the Federal Register at 74 Fed. Reg. 41649 its overdue 90-day findings on the remaining 38 species. In its publication, the FWS stated: "For 29 of the 38 species, we find that the petition does present substantial scientific or commercial information indicating that listing may be warranted." The Frigid Ambersnail was one of the 29 species for which the FWS made a positive 90-day finding.

50.  In Table 1 of the FWS's publication, located at 74 Fed. Reg. 41651, the FWS listed the Frigid Ambersnail under the heading: "Species for which Substantial Information was Presented." Under the same heading in the body of the text of the publication, the FWS concluded at 74 Fed. Reg. 41657: "[S]ubstantial information exists to indicate that the listing of Frigid ambersnail may be warranted due to the present or threatened destruction, modification, or curtailment of its habitat or range resulting from the effects from roads, livestock trampling, and logging disturbances."

51. Having made a positive 90-day finding that the Petition presented substantial information that the Frigid Ambersnail should be listed as endangered or threatened, 16 U.S.C. § 1533(b)(3)(A) required the Secretary to "promptly commence a review of the status of the [Frigid Ambersnail]."

52. Accordingly, the FWS solicited information concerning the Frigid Ambersnail's "historical and current status and distribution, [its] biology and ecology, ongoing conservation measures for the [Frigid Ambersnail] and [its] habitats, and threats to the [Frigid Ambersnail] or [its] habitats." 74 Fed. Reg. 41649. The FWS requested that the solicited information be received on or before October 19, 2009. By letter dated October 19, 2009, WildEarth Guardians submitted its comments concerning the Frigid Ambersnail via the Federal Rule-Making Portal at http://www.regulations.gov, Docket No. FWS-R6-ES-2008-0131. In its submission, WildEarth Guardians encouraged the Secretary to list the Frigid Ambersnail as endangered due to inadequate regulatory mechanisms and global climate change.

53. Pursuant to the ESA, the 12-month finding required by 16 U.S.C. § 1533(b)(3)(B) was overdue on August 18, 2009, the date the FWS published its positive 90-day finding on the Frigid Ambersnail. On August 26, 2009, WildEarth Guardians sent the Secretary and the FWS via certified mail a formal 60-day notice letter pursuant to 16 U.S.C. § 1540(g)(2)(C), informing the Secretary and the FWS that they were violating the ESA by failing to timely make a 12-month finding on the Frigid Ambersnail as required by 16 U.S.C. § 1533(b)(3)(B). The letter further informed the Secretary and the FWS that WildEarth Guardians preferred not to file suit to force compliance with the ESA, but would do so if a 12-month finding was not issued within the reasonably prompt future.

54. By letter dated September 24, 2009, the FWS acknowledged that it had received WildEarth Guardians' 60-day notice letter. The FWS suggested that the 12-month finding for the Frigid Ambersnail may not be issued until sometime in 2011.

55. Pursuant to 16 U.S.C. § 1533(b)(3)(B), the Secretary's 12-month finding for the Frigid Ambersnail is currently overdue by over 17 months. Extending the 12-month finding into 2011 would make it overdue by at least 29 months, and up to 41 months.

## V. PRAYER FOR RELIEF

Accordingly, Plaintiff respectfully requests this Court to:

1. declare that Defendant has violated the Endangered Species Act;

2. order the Defendant to complete a 12-month finding regarding the listing of the Frigid Ambersnail within 30 days;

3. award Plaintiff its costs and attorneys fees; and

4. grant Plaintiff such other and further relief as this Court may deem just and proper.

Respectfully submitted,

TODD A. COBERLY
D.C. Bar #983105
Coberly Law Office
1322 Paseo de Peralta
Santa Fe, NM 87501
(505) 989-1029
coberlylaw@gmail.com